## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL WOJTOWICZ, | : | Civil No. 1:24-CV-00962 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GICHNER SHELTER SYSTEMS, | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

### <u>MEMORANDUM</u>

Plaintiff, Paul Wojtowicz ("Wojtowicz"), claims that Gichner Shelter

Systems ("Gichner") violated his rights under the Americans with Disabilities Act

("ADA").  Specifically, Wojtowicz alleges that Gichner discriminated against him

on the basis of his disability status and retaliated against him for seeking

reasonable accommodations.  Gichner has moved for summary judgment.  For the

reasons set forth below, the court will grant Gichner's motion.

### BACKGROUND

**A. Facts**

Wojtowicz began working as a CAD designer for Gichner in February 2022.

(Doc. 49, ¶¶ 1–2.)[1]  His job was to create computer designs of metal enclosures.

(*Id.* ¶ 3.)  Except for a handful of days, Wojtowicz worked remotely at his home in

---

[1] Doc. 49 refers to the statement of material facts Gichner filed with its motion for summary judgment.  Wojtowicz does not dispute any paragraph from this document that the court cites in this section.

Mount Laurel, New Jersey, rather than Gichner's office in Dallastown, Pennsylvania. (*Id.*)

In late April 2022, Wojtowicz requested a leave of absence in order to receive treatment for prostate cancer. (*Id.* ¶ 4; Doc. 49-1, p. 27.)[2] Kim Johnson ("Johnson"), a human resources generalist for Gichner, informed Wojtowicz that his request was approved and that his leave would commence on May 17, 2022. (Doc. 49, ¶ 5.) The start date was eventually moved up to May 3, 2022, after Wojtowicz informed Gichner that he could start treatments that day. (*Id.* ¶ 6.)

Wojtowicz's leave initially expired on August 1, 2022. (*Id.* ¶ 7.) Johnson informed Wojtowicz of this via email on August 8, 2022. (*Id.*) In her email, Johnson noted that Wojtowicz's "original doctor's certification" listed a return-to-work date of Monday, August 22, 2022. (Doc. 49-1, p. 55.) Her email asked Wojtowicz to confirm that he was planning to return on that date and, if so, to complete an accommodation request form. (*Id.*) Wojtowicz responded that he was "in no condition to return to anything right now" due to side effects from his treatment, including fatigue and urinary issues. (*Id.*) He also stated that he would get back to Gichner about the accommodation request form. (*Id.*) The next day, Johnson clarified that if Wojtowicz was unable to return to work on August 22, he would need his doctor to inform Gichner when he would be able to return. (*Id.*)

---

[2] For ease of reference, the court uses the page numbers from the CM/ECF header.

On August 11, 2022, Wojtowicz's physician filled out the accommodation request form. The physician responded "yes" to the question "[d]oes the employee's condition limit his/her ability to perform the essential functions of the job" and "no" to the question that asked whether the physician had suggestions for accommodations that would "enable the employee to meet the essential functions of the job." (*Id.* at 57.) Gichner ultimately extended Wojtowicz's leave through Friday, August 19, 2022. (Doc. 49, ¶ 11.)

On August 20, 2022, Wojtowicz again requested Gichner to extend his leave, this time through early September. (Doc. 49, ¶ 14.) Gichner approved this request. (*Id.*) On September 6, 2022, Johnson emailed Wojtowicz asking him to provide an update about his medical leave and a possible return-to-work date. (*Id.* ¶ 15.) Wojtowicz responded that he was still experiencing "extreme exhaustion and urinary symptoms" and that he was "looking" to return "sometime next month." (Doc. 49-1, p. 58.) The next day, Johnson asked Wojtowicz to provide documentation from a physician to support his request by September 14, 2022. (Doc. 49, ¶¶ 17–18.) Johnson stated that the documentation needed to include an expected return-to-work date. (*Id.* ¶ 17.)

Gichner did not receive this documentation until September 23, 2022. (Doc. 49-1, p. 60.) The accommodations request form that he submitted had substantially the same answers as the first one. Wojtowicz's physician determined

3

that Wojtowicz had a "condition [that] limit[ed] his[] ability to perform the essential functions of [his] job" and did not provide any suggested accommodations.  (*Id.*)  Wojtowicz remained on leave following this correspondence.  (Doc. 49, ¶ 20.)

Johnson thereafter requested that Lacey Brooks ("Brooks"), a human resource manager, terminate Wojtowicz's employment "because he could not return back to work."  (*Id.* ¶ 21.)  On October 10, 2022, Brooks emailed her supervisor, Michelle Alcathie ("Alcathie"), to request approval to terminate Wojtowicz's employment.  (*Id.* ¶ 22.)

On October 13, 2022, Wojtowicz emailed his supervisor, Kevin Kline ("Kline"), stating that he was "hoping to return to work sometime soon, though [he] [did not] know exactly when."  (Doc. 49-1, p. 53.)  He was unable to return to work at that time, as Wojtowicz explained, because of his ongoing side effects. (Doc. 49, ¶ 27.)  Wojtowicz testified, at this deposition, that this request for an extension to his leave "may have been opened ended" and did not refer to "any specific date."  (*Id.* ¶ 28.)  He also testified at his deposition that at the time, he did not know when his leave was going to end or when he was going to return to work. (*Id.* ¶ 29.)  In that same October 13 email, Wojtowicz asked for "a small, private office with a door" as an accommodation for his "ADHD / CDD."  (Doc. 49-1, p.

4

53.)  He offered to submit documentation from his doctor to support this new request.  (*Id.*)

Alcathie ultimately approved the termination of Wojtowicz's employment on October 17, 2022.  (Doc. 49-3, p. 5.)  Two days later, Gichner finalized the termination in a letter, which stated his "employment . . . has been terminated due to Failure to Return from Medical Leave."  (Doc. 49-4, p. 2.)

## B.  Procedural Posture

Wojtowicz filed suit against Gichner on June 11, 2024.  (Doc. 1.)  His complaint stated three claims, all in a single count: (1) an ADA discrimination claim; (2) an ADA hostile-work-environment claim; and (3) an ADA retaliation claim.  (Doc. 1, p. 3.)

Shortly after answering the complaint, Gichner moved for judgment on the pleadings as to all three claims.  (Doc. 12.)  The court granted that motion with respect to the hostile work environment claim as unopposed.  *Wojtowicz v. Gichner Shelter Sys.*, No. 24-cv-962, 2024 WL 5248248, at *2 n.3 (M.D. Pa. Dec. 30, 2024).  The court denied the motion with respect to the discrimination and retaliation claims.  (Doc. 24.)

Now Gichner moves for summary judgment on these remaining two claims.  (Doc. 48.)  That motion is ripe for resolution.  (*See* Docs. 49, 50, 56, 59, 65.)

## JURISDICTION

This case arises under the laws of the United States. Therefore, subject matter jurisdiction is vested in this court under 28 U.S.C. § 1331. Venue is proper in this court under 28 U.S.C. § 1391(b).

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the

6

court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the

7

non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### A. Discrimination Claim

Under the ADA, it is illegal for a "covered entity [to] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Such discrimination includes, *inter alia*, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." *Id.* § 12112(b)(5)(A). To prevail on his discrimination claim, Wojtowicz must prove he "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017) (quoting *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006)); *accord Fowler v. AT&T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021).

Wojtowicz's claim is that Gichner discriminated against him by failing to provide reasonable accommodations, namely additional medical leave and a private office. (*See* Doc. 1, ¶¶ 21–25.). Gichner's arguments center on the second

element of the claim.  (Doc. 50, pp. 10–12.)  To Gichner, Wojtowicz was not a "qualified individual" because he was unable to perform his job without an unreasonable accommodation, *i.e.*, indefinite leave.  (Doc. 50, pp. 10–12.)

A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8).  Wojtowicz admitted that his cancer-treatment side effects prevented him from returning to work at the time he asked for additional leave on October 13, 2022. (Doc. 49, ¶ 27.)  Therefore, the issue is whether his October 13 request to extend his leave was a reasonable accommodation that would have enabled him to do his job.  A leave of absence may constitute a reasonable accommodation, but not when it is "for an indefinite and open-ended period time." *Fogleman v. Greater Hazleton Health All.*, 122 F. App'x 581, 586 (3d Cir. 2004); *accord Cartagena v. Temple Univ. Hosp., Inc.*, 389 F. Supp. 3d 341, 351 (E.D. Pa. 2019).  Thus, Wojtowicz must show that he was not seeking indefinite leave to survive summary judgment.

Wojtowicz responds in two parts.  First, he claims that the court has already decided Gichner's "indefinite leave" argument at the pleadings stage.  (Doc. 56, p. 2.)  He notes that the court wrote, in resolving Gichner's motion for judgment on the pleadings, that "an issue of fact [existed] as to whether Wojtowicz's request for further leave was for indefinite leave or whether a short amount of further leave

9

would have enabled him to return to work." (*Id.* (quoting *Wojtowicz*, 2024 WL 5248248, at \*4).)  Wojtowicz claims that this issue of fact remains.  (*Id.*)

Wojtowicz's argument appears to suggest that the court's previous opinion has some sort of preclusive effect at this subsequent stage of litigation.  Of course, it does not.  When ruling on a motion for judgment on the pleadings, the "court determines from the pleadings 'if it appears to a certainty that no relief could be granted under any set of facts which could be proved.'"  *Hazen v. Modern Food Servs., Inc.*, 113 F. App'x 442, 444 (3d Cir. 2004) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  This requires the court to "presume[] that the plaintiff will be able to prove the allegations set forth in the pleadings, and then determine[] if those allegations establish a cause of action." *Id.*  "Summary judgment involves no such presumption."  *Id.*  Instead, at summary judgment, the court "reviews all discovery and determines whether a genuine issue of material fact exists."  *Id.*  The fact Wojtowicz successfully pleaded that he did not request indefinite leave does not mean that he sufficiently proved it to survive summary judgment.

Turning to the evidence, Wojtowicz claims he has demonstrated that his request for additional leave—while not specific—was sufficiently discrete and not a request for indefinite leave.  (Doc. 56, pp. 5–7.)  Specifically, he points to his September 7 email—in which he said he is looking to return "sometime next

10

month," Doc. 49-1, p. 58—and his October 13 email—in which he said "I'm hoping to return to work sometime soon, though I don't know exactly when," *id.* at 53. Wojtowicz claims that these emails create a genuine dispute as to whether his request for additional leave was indefinite. (*See* Doc. 56, pp. 5–6.)

Wojtowicz's argument is belied by his own admissions in this lawsuit. Wojtowicz admitted at his deposition that he had no specific date in mind when he wrote in his October 13 email that he was "hoping to return to work sometime soon." (Doc. 49, ¶ 28; Doc. 49-1, p. 53; Doc. 65, ¶ 28.) He further admitted that this October 13 request for additional leave "may have been open-ended." (Doc. 49, ¶ 28; Doc. 65, ¶ 28.) Indeed, he went even as far to admit that he "did not know when his leave was going to end or when he could [have] returned to work." (Doc. 49, ¶ 28; Doc. 65, ¶ 28.) The court cannot conclude that a genuine issue of fact exists on this record.[3] Wojtowicz's admissions make clear that he requested

---

[3] Upon its own initiative, the court found that Wojtowicz testified he was hoping to return to work in "early November" 2022. (Doc. 49-1, p. 41.) Wojtowicz never raised the argument that his reference to "soon" in his October 13 email really meant "early November." Thus, he waived this argument. Even if he had raised it, however, his testimony would not create a genuine dispute of fact. For one, nothing in the record suggests that he communicated this estimate to Gichner. As far as Gichner knew, Wojtowicz was "hoping to return to work sometime soon, though [unsure] exactly when." (Doc. 49-1, p. 53.) This issue is compounded by the fact that both Wojtowicz's October 13 email and his deposition testimony simply communicate an aspiration that he was going to return to work, not a commitment. *Cf. Laigon v. Phila. Mental Health Care Corp.*, No. 11-cv-3339, 2013 WL 1842240, at *10 (E.D. Pa. May 1, 2013) (finding that "espousing the hope" of returning to work without communicating when the leave might conclude does not constitute a reasonable accommodation request). Finally, Wojtowicz's self-serving deposition testimony—made long after the events and unsupported by other evidence—does not create a genuine issue of fact. *See Cuff v. Pa. Dep't of Corr.*, No. 23-3246, 2025 WL

an open-ended, indefinite leave, which is unreasonable as a matter of law.

*Fogleman*, 122 F. App'x at 586.  Since Wojtowicz's proposed accommodation was

unreasonable, he has not proven he is a "qualified individual."  *Carpenter v. York*

*Area United Fire & Rescue*, No. 18-cv-2155, 2020 WL 1904460, at *6–7 (M.D.

Pa. Apr. 17, 2020).  His discrimination claim fails on this ground.

### B.  Retaliation Claim

Under the ADA, it is also illegal to "discriminate against any individual

because such individual has opposed any act or practice made unlawful by this

chapter."  42 U.S.C. § 12203(a).  The court must analyze Wojtowicz's retaliation

claim under the *McDonnell Douglas* burden-shifting framework.  *See Canada v.*

*Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (noting that the Third

Circuit has applied the framework to ADA retaliation claims).  Wojtowicz first

bears the burden of establishing a prima facie case for ADA retaliation.  *Id.*  To do

so, Wojtowicz must prove: "(1) protected employee activity; (2) adverse action by

the employer either after or contemporaneous with the employee's protected

activity; and (3) a causal connection between the employee's protected activity and

the employer's adverse action."  *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 501

---

1442706, at *4 (3d Cir. May 20, 2025) ("It is true that conclusory testimony by a self-serving party does not create a genuine question of fact.").

12

(3d Cir. 1997); *accord Belles v. Wilkes-Barre Sch. Dist.*, 843 F. App'x 437, 439 (3d Cir. 2021).

Gichner claims that Wojtowicz fails at this first step since he has not proven the causation element. (Doc. 50, pp. 14–17.) It argues that temporal proximity between Wojtowicz's accommodation request and his firing is insufficient to show causation. (*Id.* at 14.) Wojtowicz must, according to Gichner, adduce "evidence of intervening antagonism or retaliatory evidence." (*Id.*) Gichner is mistaken.

Wojtowicz can satisfy the causation element at the prima facie stage by proving "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." *Budhan v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)); *accord Lichtenstein*, 691 F.3d at 307; *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). "[T]here is no bright line rule as to what constitutes unduly suggestive temporal proximity." *Lichtenstein*, 691 F.3d at 307 (quoting *LeBoon*, 503 F.3d at 233). Nevertheless, the Third Circuit has found unduly suggestive temporal proximity when only several days lapsed between the protected activity and alleged retaliation. *See id.* (seven days); *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) (three days); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two days).

13

Here, Wojtowicz requested two accommodations on October 13, Doc. 49-1, p. 53, and Gichner terminated his employment on October 19, Doc. 49-4, p. 2. Six days is within the realm of what the Third Circuit has considered unusually suggestive. Therefore, Wojtowicz has made a prima facie showing of causation. Since Gichner does not challenge Wojtowicz's proof on any other elements, the court concludes Wojtowicz has stated a prima facie case of ADA retaliation.

Accordingly, the burden shifts to Gichner, who must "articulate some legitimate, nondiscriminatory reason" that it fired Wojtowicz. *Lichtenstein*, 691 F.3d at 302 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Gichner has met this "minimal burden."[4] *Id.* Wojtowicz's termination letter stated that Gichner fired him for failing to return from medical leave. (Doc. 49-4, p. 2.) This is a nondiscriminatory reason for termination. *E.g.*, *Castellani v. Bucks Cty. Municipality*, 351 F. App'x 774, 778 (3d Cir. 2009).

The burden then shifts back to Wojtowicz. *Lichtenstein*, 691 F.3d at 302. He must show "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

---

[4] Wojtowicz makes no argument to the contrary.

14

Gichner argues that Wojtowicz has failed to adduce evidence of pretext. Wojtowicz does not respond precisely to this argument. Instead, in addressing the issue of causation, he lists six instances of what he believes are Gichner's "acts of antagonism." (Doc. 56, p. 8.) Causation and pretext are two separate issues, but nevertheless both touch upon issues of motive and intent. Thus, the court will consider whether these six so-called "acts of antagonism" are sufficient to create a genuine factual dispute as to whether an invidious discriminatory reason played a role in Wojtowicz's firing.

First, Wojtowicz claims that Kline's response to his October 13 email demonstrates retaliatory animus because Kline expressed disbelief that Wojtowicz was asking for a private office. (*Id.*) Wojtowicz reads too much into this remark. Kline simply wrote, "I can't believe he's asking for an office!" (Doc. 65-1, p. 5.) No reasonable fact finder could infer a retaliatory animus from that statement alone, especially considering that Wojtowicz was a remote worker who rarely had worked in the office and had been on leave for about five months at that point. (Doc. 49, ¶ 3.)

Second, and relatedly, Wojtowicz claims that Kline's response also "includ[ed] a concocted lie to get [him] to resign." (Doc. 56, p. 8.) Wojtowicz does not bother to explain what the lie was or how it was untruthful. He simply

15

expects the court to already know this.  Such a conclusory assertion is not enough to create a genuine factual dispute.  *Jutrowski*, 904 F.3d at 288–89.

Third, Wojtowicz claims Brooks demonstrated retaliatory animus by not including his October 13 email in "her termination packet" prior to approval of his firing.  (Doc. 56, p. 8.)  Wojtowicz does not explain what he means by "termination packet."  To the extent that he is referring to a physical collection of documents, he points to nothing in the record to suggest anything of the sort existed or how the non-inclusion of his October 13 email in that collection is significant.  More likely, however, is that Wojtowicz is referring to the October 10 email that Brooks sent Alcathie, which included a timeline of events to that point.  (Doc. 65-1, pp. 142–43.)  There is an obvious, non-retaliatory reason Brooks did not include Wojtowicz's October 13 email in her October 10 timeline of events: Wojtowicz sent the former three days after Brooks sent the latter.  This does not create a genuine factual dispute.

Fourth, Wojtowicz claims that Johnson did not "follow her own protocol of following up with the medical personnel to get more detailed information."  (Doc. 56, p. 8.)  Wojtowicz nether elaborates on this argument nor provides citations to record evidence, so the court cannot discern what information Johnson typically obtains in these circumstances or what Wojtowicz thinks Johnson should have obtained.  Wojtowicz may be referencing Johnson's testimony that she did not ask

16

him for a return-to-work date after September 23, 2022.  (Doc. 65-1, p. 107.)  This

argument—if Wojtowicz is, indeed, making it—is unavailing.  Wojtowicz ignores

that Johnson notified him that Gichner needed to know when he was going to

return to work on at least three occasions.  (Doc. 49-1, p. 55, 58, 59.)  The fact that

she might not have requested a return-to-work date a fourth time after asking three

prior times does not demonstrate antagonism or retaliatory motive.

Fifth, Wojtowicz argues that Gichner acted with retaliatory motive because

it did not fill his position for two or three months.  This assertion, again, lacks any

citation to the record.  It is not the undersigned's role to comb the record in search

of evidence to support this assertion.  After all, "[j]udges are not like pigs, hunting

for truffles buried in the record."  *United States v. Morton*, 993 F.3d 198, 204 n.10

(3d Cir. 2021) (quoting *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820

n.8 (3d Cir. 2006)).  Wojtowicz has failed to proffer any evidence that his assertion

is true; therefore, such assertion cannot create a genuine dispute of fact.

Sixth, and finally, Wojtowicz insists that Gichner's alleged retaliatory

motive is evidenced by the fact that human resources did not investigate whether

"holding his job was an undue burden."  (Doc. 56, p. 8.)  He claims this failure to

investigate reveals that Gichner had "no business concerns in firing him," meaning

Gichner's motive must have been retaliatory.  (*Id.*)  This argument fails for two

reasons.  For one, Wojtowicz yet again fails to cite record evidence to support the

17

assertion that Gichner did not investigate whether his requested accommodation would have imposed an undue burden. Putting this aside, however, it is well established, as discussed above, that open-ended, indefinite leave is an unreasonable accommodation as a matter of law. Gichner was under no obligation to determine whether Wojtowicz's unreasonable accommodation request would have subjected them to an undue burden.

Ultimately, Wojtowicz does not raise a genuine factual dispute as to whether Gichner's stated reason for terminating his employment was pretext for unlawful discrimination. His retaliation claim, therefore, fails.

## CONCLUSION

For the reasons set forth herein, the court will grant Gichner's motion for summary judgment. An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: June 22, 2026

18